CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 3 1 2018

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| LYLA GOFF WOOD, | ) |
| | ) Civil Action No. 3:18CV00004 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| v. | ) |
| | ) By: Hon. Glen E. Conrad |
| NANCY A. BERRYHILL, Acting | ) Senior United States District Judge |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423, and 42 U.S.C. § 1381 et seq., respectively. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3). As reflected by the memoranda and argument submitted by the parties, the issues now before the court are whether the Commissioner's final decision is supported by substantial evidence, or whether there is "good cause" to necessitate remanding the case to the Commissioner for further consideration. See 42 U.S.C. § 405(g).

The plaintiff, Lyla Goff Wood, was born on July 19, 1978. She did not graduate from high school but eventually earned a GED. Ms. Wood has been employed as a bank teller, customer service representative, secretary, and auto parts clerk. She worked in some capacity until 2012. (Tr. 40). However, none of the jobs performed in the fifteen-year period preceding the Commissioner's final decision rose to the level of substantial gainful activity. (Tr. 26).

On May 22, 2014, Ms. Wood filed applications for disability insurance benefits and supplemental security income benefits. In filing her current claims, Ms. Wood alleged that she became disabled for all forms of substantial gainful employment on January 1, 2010, due to

Crohn's disease, depression, migraines, and high cholesterol. (Tr. 215). Ms. Wood now maintains that she has remained disabled to the present time. With respect to her application for disability insurance benefits, the record reveals that Ms. Wood met the insured status requirements of the Act through the first quarter of 2011, but not thereafter. See generally, 42 U.S.C. §§ 416(i) and 423(a). Consequently, plaintiff is entitled to a period of disability and disability insurance benefits only if she has established that she became disabled for all forms of substantial gainful employment on or before March 31, 2011.

Ms. Wood's applications were denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 26, 2017, the Law Judge also determined, after applying the five-step sequential evaluation process, that Ms. Wood is not disabled. See 20 C.F.R. §§ 404.1520 and 416.920.[1] The Law Judge found that Ms. Wood suffers from several severe impairments, including Crohn's disease, depression, and migraines, but that these impairments do not, either individually or in combination, meet or medically equal the requirements of a listed impairment. (Tr. 18). The Law Judge then assessed Ms. Wood's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except the claimant can occasionally climb stairs and ramps, stoop, kneel, balance, crouch, and crawl; never climb ladders, ropes, or scaffolds; needs ready access to a restroom at regularly scheduled breaks; and must avoid concentrated exposure to hazards including dangerous moving machinery and unprotected heights. The claimant is limited to simple routine repetitive tasks,

---

[1] The process requires the Law Judge to consider, in sequence, whether a claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and (5) if not, whether she can perform other work in the national economy. 20 C.F.R. §§ 404.1520 and 416.920. If a decision can be reached at any step in the sequential evaluation process, further evaluation is unnecessary. Id.

superficial contact with the public, and low stress work, meaning no high production quotas or fast paced assembly.

(Tr. 20). Given her residual functional capacity, and after considering Ms. Wood's prior work experience and the testimony of a vocational expert, the Law Judge determined that Ms. Wood retains sufficient functional capacity to perform certain light work roles existing in significant number in the national economy. (Tr. 26). Accordingly, the Law Judge concluded that Ms. Wood is not disabled, and that she is not entitled to benefits under either federal program. See generally 20 C.F.R. §§ 404.1520(g) and 416.920(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Ms. Wood has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. §§ 423(d)(2) and 1382c(a). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

On appeal, Ms. Wood raises several arguments, including that the Law Judge improperly assessed the medical opinion evidence, erred in determining her residual functional capacity, and presented a legally insufficient hypothetical to the vocational expert. After reviewing the record and considering the parties' arguments, the court finds "good cause" to remand the case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g).

The medical record confirms that Ms. Wood has a history of depression related to her physical impairments. In February of 2014, one of her treating physicians, Dr. Margaret Hobson, noted that plaintiff was "not doing well in terms of Crohn's disease," and that she was "very depressed and overwhelmed by this illness." (Tr. 510). Dr. Hobson diagnosed plaintiff with "[m]ajor depressive disorder recurrent episode," for which she prescribed Effexor. (Tr. 510-11). Several months later, in October of 2014, Dr. Hobson noted that Ms. Wood was still "very much depressed" as a result of her physical limitations, and that the previously prescribed medication had reportedly made her feel worse. (Tr. 709). Dr. Hobson switched plaintiff's medication from Effexor to Celexa, and advised plaintiff that it was "imperative that she continue to take the medication every day." (Tr. 709). Examination notes from a follow-up visit in November of 2014 indicate that over half of the appointment was "spent counseling pt re depression," and that her medication was switched back to Effexor because of the side effects she was experiencing with Celexa. (Tr. 697-98). More recently, Ms. Wood has been prescribed Xanax for anxiety and she has received individual therapy from Dr. Lynne Lunsford. (Tr. 666, 758). On October 26, 2016, Dr. Lunsford noted that plaintiff "continues to have symptoms of depression and anxiety." (Tr. 758).

As the request of the state agency, Dr. Elizabeth Hrncir performed a consultative psychological evaluation on December 9, 2014. Based on the clinical interview and mental status examination, Dr. Hrncir diagnosed plaintiff with major depressive disorder, recurrent, moderate to severe. (Tr. 555). She assessed Ms. Wood's functional capacity as follows:

> Ms. Wood can perform simple and repetitive tasks but may have difficulty with complex and detailed tasks . . . . Ms. Wood will need additional supervision to complete work activities on a consistent basis, maintain regular attendance in the workplace, and complete a normal workday. Ms. Wood is not expected to have difficulty accepting instructions from supervisors. Ms. Wood's symptoms

4

>  will influence her interactions with coworkers and the public. Ms.
>  Wood may show a moderate to severe exacerbation of symptoms to
>  the usual stresses encountered in competitive work.

(Tr. 555).

The Law Judge ultimately concluded that Ms. Wood's mental impairment does not render her disabled for all forms of substantial gainful employment or otherwise contribute to an overall disability. At step two of the sequential process, the Law Judge found that plaintiff's depression is "'severe' within the meaning of the regulations because [it causes] more than a minimal limitation in the claimant's ability to perform basic work activities." (Tr. 18). In making this determination, the Law Judge accorded "little weight" to the opinions of the state agency consultants who found that Ms. Wood's mental impairment is not severe. (Tr. 26). The Law Judge emphasized that the "evidence received at the hearing level, including Dr. Lunsford's report, demonstrates the claimant has a severe mental impairment." (Tr. 26).

In evaluating Ms. Wood's mental impairment under step three of the sequential process, the Law Judge determined that she has "moderate limitations" with respect to "concentrating, persisting, or maintaining pace." (Tr. 19). Under the regulations, this area of mental functioning "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404 Subpt. P, App'x 1, section 12.00(E). Examples include: performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; and sustaining an ordinary routine and regular attendance at work. Id. In determining that Ms. Wood is moderately limited in this area of mental functioning, the Law Judge observed as follows:

>  Consultative examiner Elizabeth Hrncir, Ph.D., noted the claimant
>  recalled one trial of the three trials of the digit forward sequences.
>  She recalled two trials of the three trials of the digit backward
>  sequences. She was unable to explain four proverbs using logical,

5

> abstract reasoning processes. However, she recalled her birth date, age, address, phone number, year obtained GED, and age of boyfriend, son, daughter, and brother. On other mental status examinations, the claimant was noted to have normal attention span and concentration.

(Tr. 19).

In assessing plaintiff's residual functional capacity, the Law Judge gave Dr. Hrncir's opinions "partial weight." (Tr. 25). The Law Judge found that the results of the mental status examination conducted by Dr. Hrncir supported "limiting the claimant to simple routine repetitive tasks and low stress work." (Tr. 25). However, because "the claimant recalled the first and current presidents of the United States, her birth date, age, address, phone number, year obtained GED, and age of boyfriend, son, daughter, and brother," the Law Judge determined that "further limitations in the claimant's abilities are not warranted." (Tr. 25). The Law Judge also determined that a "limitation in the claimant's interaction with supervisors and coworkers is not warranted," since plaintiff "was cooperative and she reported strong family relationships." (Tr. 25).

In the court's view, the difficulty with the Law Judge's evaluation of plaintiff's mental impairment is two-fold. First, the Law Judge failed to build an "accurate and logical bridge" from the evidence she recounted to her conclusions regarding Ms. Wood's mental residual functional capacity. Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016). In performing a residual functional capacity assessment, a Law Judge "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting SSR 96-8p, 1996 SSR LEXIS 5, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996)). Additionally, if the residual functional capacity assessment "conflicts with an opinion

6

from a medical source, the [Law Judge] must explain why the opinion was not adopted." SSR 96-8p, 1996 SSR LEXIS 5, 61 Fed. Reg. at 34,478. Ultimately, the Law Judge "must both identify evidence that supports [her] conclusion and 'build an accurate and logical bridge from [that] evidence to [her] conclusion.'" Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (emphasis in original) (quoting Monroe, 826 F.3d at 189).

The court is unable to conclude that the Law Judge did so in the instant case. In evaluating plaintiff's residual functional capacity, the Law Judge credited Dr. Hrncir's assessment in "limiting the claimant to simple routine repetitive tasks and low stress work," but apparently rejected Dr. Hrncir's opinion that plaintiff would need additional supervision to finish work activities on a consistent basis, maintain regular attendance, and complete a normal workday. (Tr. 25). However, the only evidence the Law Judge cited to support her determination that "further limitations in the claimant's abilities are not warranted" is the fact that Ms. Wood was able to recall such basic information as her address, phone number, the name of the president, her age, and the ages of close family members. (Tr. 25). Importantly, the Law Judge never explained how she concluded, based on this evidence, that Ms. Wood can finish work activities on a consistent basis, maintain regular attendance, and complete a normal workday without additional supervision. The Law Judge "therefore failed to build an 'accurate and logical bridge' from the evidence [she] recounted to [her] conclusion about [plaintiff's] residual functional capacity." Woods, 888 F.3d at 694. Moreover, to the extent the Law Judge's decision appears to correlate the ability to perform simple tasks with the ability to maintain concentration, persistence, and pace, the United States Court of Appeals for the Fourth Circuit has made clear that "the ability to perform simple tasks differs from the ability to stay on task." Mascio, 780 F.3d at 638.

For similar reasons, the court is also unable to conclude that the Law Judge presented a legally sufficient hypothetical to the vocational expert. It is unclear whether the Law Judge attempted to account for her conclusion that Ms. Wood experiences moderate difficulties in concentration, persistence, or pace. The Law Judge asked the vocational expert to consider someone with Ms. Wood's age, education, and prior work experience who has the following limitations:

> [A]ssume the individual is limited to light exertion. Can occasionally climb stairs, ramps, stoop, kneel, balance, crouch and crawl; and never climb ladders, ropes, scaffolds; and needs ready access to the restroom at regularly scheduled breaks. In addition must avoid concentrated exposure to hazards including dangerous moving machinery and unprotected heights .... [T]his individual is [also] limited to simple, routine, repetitive tasks; superficial contact with the public, and low stress meaning no high production quotas or fast-paced assembly.

(Tr. 55-56). While the Law Judge adopted the vocational expert's opinion that plaintiff can perform work as a non-postal mail clerk, laundry worker, or maid, the vocational expert was not asked to consider the significance of moderate limitations in concentration, persistence, or pace in the performance of such jobs, all of which would seemingly require attendance to task. Nevertheless, the Law Judge relied on the testimony of the vocational expert in determining that Ms. Wood retains sufficient functional capacity for several specific work roles existing in significant number in the national economy.

In Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989), the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it

>   must be in response to proper hypothetical questions which fairly set
>   out all of claimant's impairments.

Id. at 50 (citations omitted).

In her opinion, the Law Judge did not offer any specific rationale for omitting moderate limitations in concentration, persistence, or pace in her hypothetical question propounded to the vocational expert. The court is simply unable to conclude that the hypothetical question posed by the Law Judge, which assumed that plaintiff can perform low stress work involving simple, routine, repetitive tasks, was sufficient to alert the vocational expert to the existence of moderate limitations in plaintiff's concentration, work persistence, and attendance to task. The court believes that consideration of such limitations would be important in assessing a claimant's capacity to perform the jobs envisioned by the Law Judge for Ms. Wood.

Moreover, the Fourth Circuit has specifically held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638 (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1776, 1180 (11th Cir. 2011)). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id.

The court recognizes that Mascio does not stand for the proposition that moderate limitations in concentration, persistence, or pace always translate into a limitation in a claimant's residual functional capacity. Rather, the decision underscores the Law Judge's duty to explain how her residual functional capacity findings adequately account for a claimant's work-related limitations. For instance, the Law Judge "may find that the concentration, persistence, or pace limitation does not affect [a claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." Id. In this case, however,

9

the Law Judge did not provide such explanation or build a logical bridge between her findings and the evidence of record. Consequently, a remand is in order. Id.

For the reasons stated, the court finds "good cause" to remand the case to the Commissioner for further development and consideration.[2] If the Commissioner is unable to decide this case in plaintiff's favor on the basis of the existing record, the Commissioner will conduct a supplemental administrative hearing at which both sides will be allowed to present additional evidence and argument. An appropriate order of remand will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 31st day of AUGUST, 2018.

_____
Senior United States District Judge

---

[2] In light of the court's decision to remand the case to the Commissioner, the court declines to address Ms. Wood's remaining claims of error.